**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

LAWRENCE E. BLAINE,                      Case No. 1:10-cv-208

        Plaintiff,                      Spiegel, J.
                                           Bowman, M.J.

   v.

WYOMING CITY MANAGER,
a/k/a City of Wyoming, et al.,

        Defendants.

## REPORT AND RECOMMENDATION

Pursuant to local practice, two motions in this civil rights case have been referred to the undersigned magistrate judge: 1) a motion for summary judgment filed by the City of Wyoming, the Wyoming City Manager and the Wyoming City Council ("Wyoming Defendants")(Doc. 45); and 2) a motion for summary judgment filed by the Hamilton County Treasurer (Doc. 46). Plaintiff, through counsel, has filed a joint response to both motions (Doc. 47), to which the Defendants have filed separate reply memoranda (Docs. 48, 49). For the reasons that follow, I now recommend that Defendants' motions be granted.

### I. Background

Plaintiff Lawrence E. Blaine initiated this litigation *pro se*, alleging that the Wyoming City Manager and City Council wrongfully conspired with the Hamilton County Treasurer to acquire the real property of residents in a historically black area of the City of Wyoming. (Doc. 6 at 3). According to Plaintiff, the Wyoming City Manager approached the Hamilton

County Treasurer "to transfer any properties that had delinquent taxes, to the City of Wyoming after the City had paid the taxes." (*Id.*). Plaintiff states in an affidavit in response to Defendants' motion for summary judgment that an unidentified neighbor told him on an undisclosed date of "certain city Council minutes" that were "on the City of Wyoming's website," but which were subsequently removed from that website and "no longer available to the general public." (Doc. 47-1).[1] Neither Plaintiff's Complaint nor the affidavit filed in response to Defendants' motions for summary judgment provides the date of the Council minutes, the date(s) they were posted on the City website, or the date that they were removed. However, according to Plaintiff, the minutes support the allegation in his complaint that the then-City manager was authorized to obtain certain tax delinquent properties by entering into an agreement with the Hamilton County Treasurer for transfer of the properties after payment by the City of the delinquent taxes.

Plaintiff contends that the alleged agreement between City and County affected him, and violated his constitutional rights, when in July 2008, Plaintiff received a $400 bill for water service to real estate he owned at 632 Oak Avenue in Wyoming, Ohio. Plaintiff believed the water bill was exorbitantly high, and contacted the City of Wyoming to request an investigation of the increased water usage. (Doc. 45 at 18-19, Blaine Deposition at p. 80-81). City inspectors responded and determined that there was a leak on Plaintiff's property. (*Id.* at 81). The City shut off the water at the street, so that Plaintiff could arrange to repair the leak. (*Id.*).

---

[1] The Wyoming Defendants object to consideration of Plaintiff's affidavit based upon Plaintiff's lack of personal knowledge of the facts stated therein. The Court declines to reject the affidavit on the basis urged by the Wyoming Defendants, but concludes nevertheless that the affidavit fails to establish any genuine issue of material fact that would preclude summary judgment in this case.

Plaintiff alleges that he felt the impact of the City's racially motivated policy some time after the City disconnected his waterline for the repair. Specifically, Plaintiff alleges in his complaint that following the repair, the City of Wyoming refused to re-connect the water until he first paid the water bill and/or taxes that were alleged to be past due. However, Plaintiff's deposition testimony undermines or contradicts several allegations in his complaint. For example, Plaintiff's complaint alleges that he "suffered a direct infringement of his property rights" by the City's action in disconnecting and refusing to reconnect his water, "resulting in Plaintiff having to move out of Wyoming" and "forcing him to move out of the City of Wyoming." (Doc. 6 at 4). At his deposition, however, Plaintiff testified that he was not living at the Oak Avenue address at the time the water was disconnected, that he had not lived there since approximately 2006,[2] and that he was not renting the vacant property to anyone at the time that water services were disconnected. (*Id.* at 86).

Plaintiff further testified that he did not seek to have his water service re-connected for "years" after repair of the leak, and did not seek to pay the past due balance on the water bill during that time period. The Defendant City has tendered evidence in support of summary judgment that on December 30, 2008, the City mailed a notice to Plaintiff advising him that the City had not received payment on the water bill. (*See* Doc. 45 at 30; *see also* Doc. 45 at 31, Affidavit of Jeremiah Caudill at ¶3). On January 29, 2009, the City of Wyoming mailed a second notice advising Plaintiff that the City still had not received payment of the balance on the account. (*See* Doc. 45 at 33; Doc. 45 at 31, Affidavit at ¶4).

---

[2]Plaintiff testified that he had not lived in the home since "about five years ago," from the June 2011 deposition date.

The January 2009 notice advised Plaintiff that if he failed to make full payment on the delinquent account within fourteen (14) days, the charges plus applicable penalties would be "certified for placement upon the tax bill for collection." (*Id.*). The City received no response from Plaintiff to its January 2009 notice letter. (Doc. 45 at 31, Affidavit at ¶5). Plaintiff's unpaid water bill was thereafter assessed to Plaintiff's Hamilton County property tax account in February 2009. (Doc. 45 at 32, Affidavit at ¶6; Doc. 45 at 33 (assessment)).

Plaintiff testified in his deposition that he never received the City's notices (which were sent to the vacant Oak Avenue address), but that he "knew I had a bill," despite his alleged lack of knowledge of the precise amount. (Doc. 45 at 22, Deposition at 88). Plaintiff explained that he did not bother seeking to have the water turned back for years, since he was "living someplace else," and believed the City would "adjust the bill." (Doc. 45 at 20, Deposition at 86). Thus, while Plaintiff claims that he did not receive the notices sent to his vacant property in 2008 and 2009, he never contacted the City regarding water services during that time. (Doc. 45 at 21-23, Deposition at 87-89).

In March 2010, Plaintiff finally contacted the City to request that water services to Oak Avenue be turned back on. At that time, the City referred Plaintiff to the Hamilton County Treasurer's Office to make payment on his tax bill, which by that time included the delinquent water bill. Later the same month, Plaintiff rented the Oak Avenue property out to a tenant. The tenant requested connection of water services to the property under her name.[3] The City of Wyoming re-connected the water service on March 25, 2010 on behalf

---

[3]Plaintiff states in his opposing memorandum that the new tenant was Caucasian, implying (but not stating directly or providing any proof) that the restoration of the water service may have been facilitated by the tenant's race.

4

of the new tenant, notwithstanding Plaintiff's failure to pay the full amount assessed by the Hamilton County Treasurer's Office.

Hamilton County has submitted evidence that Plaintiff had a history of delinquent property taxes. On October 16, 2008, and again on March 23, 2009, Plaintiff entered into installment agreements with Hamilton County to pay his delinquent property taxes. The October 2008 agreement reflects Plaintiff's agreement to pay "the full amount of Delinquent Tax" (then totaling $1307.22) in a total of 5 installment payments of $261.46, on a semi-annual basis, "along with the full amount of current taxes then due and payable." (Doc. 47-3). The October 2008 agreement stated that Plaintiff's failure to make any of the installments or failure to pay the current taxes then due "in addition thereto," would render the agreement "void." (*Id.*). A similar agreement was executed in March 2009 for payment of delinquent taxes then due, totaling $1486.16, also to be made in a series of 5 installment payments on a semiannual basis "along with the full amount of current taxes then due and payable." (Doc. 47-4). Both contracts expressly permitted early payments of the installment amounts, but also specified that the total of both installment and current due taxes must be made by the semi-annual payment deadline.[4] Defendant Hamilton County avers that after making one initial payment under each of the two agreements, Plaintiff defaulted and did not make further payments as required by the respective agreements. (Doc. 46-2, Affidavit of Chief Deputy to Treasurer, Michael Lonneman, at ¶ 2).[5]

---

[4]Plaintiff argues (*see* Doc. 47 at 3) that the 2009 agreement "superseded" the 2008 agreement. The Court need not resolve whether the 2009 agreement replaced and superseded the 2008 agreement, as that fact is not material to the resolution of the pending motions for summary judgment.

[5]Plaintiff "objects to this affidavit which were [sic] clearly created in response to and after Plaintiff sent Defendant an information request under the Federal Freedom of Information Act." (Doc. 47 at 10). Even if Plaintiff's unsupported assertion were true, it is not grounds for this Court to disregard the affidavit. In any

In his opposition to summary judgment, Plaintiff alleges that he attempted to make a partial payment under the 2009 contract five days before the deadline, on November 24, 2009,[6] but that his payment was wrongfully rejected and he was directed to the Treasurer's Legal Department. (Doc. 47 at 3). Plaintiff asserts in his memorandum (again, without citation to the record) that he was eventually permitted, by an undisclosed person and on an undisclosed date, to make "partial payments" on his tax bill. Plaintiff appears to argue that the County either breached the parties' 2008/2009 agreement(s) or attempted to do so (in refusing payment), because the agreement(s) expressly permitted early "installment" payments prior to the deadline by which the total amount of current tax plus the installment balance was due. (*See* Doc. 47 at 4). It is not entirely clear what relationship this alleged breach or partial breach of the prior installment agreements by one or more County employees bears to the Plaintiff's civil rights claims against the County.[7]

Pursuant to O.R.C. §323.31(A)(1), a property owner is guaranteed "at least one opportunity" to enter into an installment agreement to pay delinquent taxes. However, any additional agreements are at "the county treasurer's sole discretion." While the record is not entirely clear, Defendant Hamilton County suggests that Plaintiff likely was denied the

---

event, the Freedom of Information Act (FOIA) does not apply to nonfederal agencies or officers, see 5 U.S.C. §§551(1) and 552(f). While Ohio has its own statutes that govern access to public records, Defendants represent to this Court that it is the policy of the Hamilton County Treasurer to permit the inspection of public records during normal business hours. (Doc. 49 at 2).

[6] In another portion of his memorandum in opposition, Plaintiff lists the date he attempted to make partial payment on the tax bill as "November 11th, 2009." (Doc. 47 at 10).

[7] Plaintiff suggests that permission for a "partial" payment "was indicated on his invoice that was stamped and endorsed "no title due." (Doc. 47 and 47-5). The words "no title due" and the date "11/24/09" appear on the referenced exhibit, but no explanation of the meaning is apparent from the document itself. While the facts alleged by Plaintiff regarding the installment agreement(s) have been included in the interest of completeness of the record, any dispute concerning this issue does not appear to be material to disposition of the pending motions for summary judgment.

opportunity to enter into a third installment agreement based upon his prior history of failing to comply with two prior agreements. (Doc. 46-2, Affidavit at ¶¶5-6).

On February 2, 2010, Defendant Goering filed a foreclosure action on the Oak Avenue property based upon the non-payment of property taxes. At the time, Plaintiff owed approximately $1,800.00 in delinquent property taxes. (*Id*. at ¶¶2-3). On January 20, 2011, Defendant Goering dismissed the state foreclosure action based upon Plaintiff's payment of the delinquent property taxes on or about that same date.

In his response in opposition to summary judgment, Plaintiff contends that he initially "refrained from paying the amount listed because he was advised by City employees at each one of his visits [to] the city administration offices [regarding] his water bill that he must be patient because they are waiting for the water works department to adjust the bill." (Doc. 47 at 4). However, Plaintiff does not identify the dates he visited the "city administration offices," or the name(s) of the employees with whom he spoke, nor does he cite to any record evidence to support his representation. Given his deposition testimony that he did not inquire about his water bill or restoring water services until 2010, the Court assumes that his visits post-dated his initial 2010 inquiry into restoration of service.

After water service was restored, on April 1, 2010, Plaintiff filed this lawsuit, alleging that his constitutional rights were infringed upon in violation of 42 U.S.C. §§1982, 1983, and 1985 through the City and County Defendants' actions, and that he suffered damages by being forced to move from the City of Wyoming. (*Id.*). Plaintiff seeks monetary damages for the alleged violation of his property rights, punitive damages, and court costs. (Doc. 6 at 5). On December 9, 2010, Nadia Blaine of The Blaine Law Firm in Wyoming,

Ohio entered her appearance on behalf of Plaintiff,[8] but counsel has never sought to amend the original complaint.

## II. Analysis

### A. Summary Judgment Standard

In considering a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir.2007) (internal quotation marks and additional citations omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed.R.Civ.P. 56(c), internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the nonmoving party, however, does not mean that the court must find a factual dispute where record evidence contradicts wholly unsupported allegations. After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v.*

---

[8]Plaintiff testified in his deposition that Nadia Blaine is his wife. (Doc. 46-5 at 2, Blaine Deposition at 9).

*Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)).  In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50, 106 S.Ct. 2505 (1986).  The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor."  *Id.* at 255 (emphasis added).  The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided.  *Id.* at 251-52.

Although reasonable inferences must be drawn in favor of the opposing party, *see Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356, inferences are not to be drawn out of thin air.  Rather, once the moving party has demonstrated the absence of evidence to support the nonmoving party's case, the nonmoving party must "'go beyond the pleadings'" to show that "'there is a genuine issue for trial.'" *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (*quoting Celotex*, 477 U.S. at 324).  To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1356 (citation omitted).

In this case, Plaintiff has failed to present anything more than his own conclusory allegations in support of his claims.  Plaintiff's allegations fail to create any genuine issue of material fact because the most critical allegations are refuted by evidence filed of record.  Plaintiff's response in opposition to Defendants' motions fails to persuade, because

although he offers new allegations, those allegations are conclusory and unsupported, and in virtually every instance are contradicted by record evidence offered by the Defendants. Conclusory allegations, standing alone, are insufficient to demonstrate a genuine issue for trial.

## B. The Wyoming Defendants' Motion for Summary Judgment

In Plaintiff's *pro se* complaint, he names the City of Wyoming, the City Manager of Wyoming "individually and in his capacity as City Manager," the Wyoming City Council "individually and in their capacity as members of council,"[9] and the Hamilton County Treasurer. The Wyoming Defendants assert that Plaintiff has: 1) failed to conduct any discovery; 2) failed to serve his initial disclosures as required by Rule 26(a); 3) failed to respond to the Defendants' discovery requests; and 4) admitted in the only discovery completed (Plaintiff's deposition) that he has *no evidence* to support *any* of his allegations. The Wyoming Defendants contend that they are entitled to summary judgment for two reasons: 1) Plaintiff's complaint fails to state a claim under the *Ashcroft v. Iqbal* plausibility standard;[10] and 2) Plaintiff's deposition testimony confirms that he cannot produce any evidence, or establish the existence of any genuine issue of material fact in support of his claims.

The City's reference to the *Iqbal* standard suggests reliance upon Rule 12(b)(6) as

---

[9]Despite this attempted designation of capacity, Plaintiff never identified either the City Manager or any member of City Council by name and none of those individuals were ever served individually. Therefore, Plaintiff's claim remains only against the City Manager and the City Council in their official capacities, akin to claims brought solely against the City itself.

[10]In *Ashcraft v. Iqbal*, 129 S.Ct. 1937 (2009), the Supreme Court explained: "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

grounds for dismissal of the complaint for failure to state a claim. The City's additional arguments concerning Plaintiff's lack of participation in the discovery process suggest dismissal under either as a sanction under Fed. R. Civ. P. 37, or for failure to prosecute under Fed. R. Civ. P. 41. However, the most persuasive argument presented is that the City is entitled to summary judgment based upon Plaintiff's failure to show that the City violated any of his constitutional rights. Based on the strength of that argument, the Court finds no need to reach the City's alternative arguments for dismissal.

To prove that a constitutional violation occurred under 42 U.S.C. § 1983, a plaintiff must establish that: (1) he was deprived of a right secured by the Constitution or laws of the United States, and (2) the alleged deprivation was committed under color of state law. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). A municipality can be held liable under 42 U.S.C. § 1983 only where the municipality itself caused the alleged constitutional violation; a municipality cannot be held liable upon a *respondeat superior* theory. *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 691 (1978). Accordingly, the proper inquiry is whether there is a "direct causal link" between a municipality's custom or policy and the alleged constitutional violation. *City of Canton v. Harris*, 489 U.S. 378 (1989); *Monell*, 436 U.S. at 694 (a government entity is only liable under § 1983 "when execution of a government's policy or custom . . . inflicts the injury").

Here, Plaintiff's claim rests in part upon the City's act in disconnecting the water service to Plaintiff's property in order to allow Plaintiff to make repairs to his water pipes, following Plaintiff's request for an investigation to determine the source of the increase in water consumption at his then-vacant property. The City's action in disconnecting the

water line in response to Plaintiff's request does not amount to a deprivation of Plaintiff's property rights. Given that Plaintiff did not seek to restore water services until 2010, the failure of the City to re-connect the service (absent any request) also does not amount to a deprivation of Plaintiff's property rights.

Another portion of Plaintiff's claim concerns the City's failure to immediately re-connect the water service in 2010 once Plaintiff finally made a request for restoration of service. However, a municipality is not constitutionally required to provide water service to a customer who is delinquent in paying for service. *See Gatton v. Mansfield*, 67 Ohio App. 210, 212, 36 N.E.2d 306 (Ohio Ct. App. 1940); *see also City of Mansfield v. Humphreys Mfg. Co.*, 82 Ohio St. 216, 92 N.E. 233 (Ohio Ct. App. 1910). Therefore, the City did not violate any constitutional right by insisting that Plaintiff pay his outstanding delinquent bill before it would re-connect his service.

Plaintiff's contention that the City improperly conspired with Hamilton County when it sent the bill to the Hamilton County Treasurer for assessment on Plaintiff's tax bill also fails to state a violation of any constitutional right. Plaintiff has attached to his response in opposition to summary judgment an exhibit identified as "guidelines" published by the City of Wyoming Water Department, undated, but apparently copied off of the City's webpage on November 2, 2011. (Doc. 47-11). Plaintiff argues that those guidelines do not "mention ...a certification agreement between Wyoming and the County," such that the certification must have been improper or illegal. (Doc. 47 at 10). However, pursuant to O.R.C. §735.29(A), a municipality may certify unpaid water charges, together with any penalties, to the county auditor for placement upon the real property tax list. Given the fact that the water had been turned off at the vacant property for a period of nearly two years,

with no request that it be turned back on made by Plaintiff and no payment of the delinquent bill, it was reasonable as a matter of law for the Wyoming Defendants to certify the water bill to the county auditor for placement upon Plaintiff's tax bill.

Plaintiff testified in his deposition that he has no documents and no other evidence or "proof," other than his own belief, that the City and the County conspired together and/or devised a plan for the City of Wyoming to illicitly take or acquire residential property in the historically black neighborhood in which his Oak Avenue residence allegedly was located. (Doc. 45, at 16-17). He testified that his wife, who is acting as Plaintiff's attorney, "may have knowledge regarding the allegations" in his complaint, but Ms. Blaine has offered no affidavit or other evidence to support Plaintiff's claims.[11] Even the affidavit attached to Plaintiff's opposition to summary judgment fails to offer any support for Plaintiff's allegation of a racially motivated conspiracy. Plaintiff's affidavit, which cannot be used to contradict his prior deposition testimony, alleges that Plaintiff learned from undated minutes posted at some point on the City's website that the City manager was, at one time, authorized by Council "to attempt to obtain certain tax delinquent properties situated in Wyoming by entering into an agreement with the Hamilton County Treasurer for such transfer of the properties after payment of the delinquent taxes." (Doc. 47-1). In other words, even Plaintiff's vague affidavit does not speak to any racial animus, or identify the "certain delinquent properties" as those in the alleged "historically black" neighborhood.[12]

---

[11] Of course, had counsel offered her own affidavit, additional problems may have arisen given the ethical prohibitions against counsel for a party appearing as a fact witness.

[12] The fact that Plaintiff has offered no evidence whatsoever of any racial animus or bias is particularly damaging to his claims. Even if the City had expressed some policy (of which there is no evidence) to acquire properties in which delinquent taxes were owed to the County, that alleged plan would not necessarily be unconstitutional absent any evidence of a violation of due process, equal protection, or

In his memorandum in opposition, Plaintiff argues that he is not required to come forward with facts in opposition to Defendants' motions in this case, because under the summary judgment standard,[13] the Defendants have not demonstrated the absence of a genuine factual dispute when the Court draws all reasonable inferences in favor of Plaintiff. Plaintiff accuses the Defendants of "nothing more than bald assertions" (Doc. 47 at 7). The key, however, is "reasonable" or "justifiable" inferences. The Court is not required to draw inferences out of thin air, as Plaintiff appears to do in this case.

This Court's review of the record finds support for Defendants' assertions, but none at all for Plaintiff's allegations, most of which Plaintiff does not even attempt to support with citation to the record. Plaintiff's lack of evidentiary support for the elements of his claims is confirmed by his deposition testimony that he has no documentary or testimonial evidence, or witnesses, to support those claims. (*See* Doc. 45 at 16-17, Blaine Deposition at 74-75 ("I have no proof, no paperwork – nothing in writing of anything.").

Where municipal authorities have not committed a constitutional violation, as a matter of law a municipality cannot be held liable under § 1983. *See generally Weeks v. Portage County Executives Offices,* 235 F.3d 275, 279 (6th Cir. 2000)(where a deputy did not violate an appellant's constitutional rights his governmental employer could not be held liable). Given record evidence that demonstrates the City did not violate any of Plaintiff's constitutional rights, and Plaintiff's admission that he lacks any proof for his conclusory

_____

some other type of constitutional right of the property owner.

[13]Plaintiff also mistakenly suggests that the standard set forth in *Matsushita v. Zenith Radio*, 475 U.S. 574, does not apply to civil rights cases. (Doc. 47 at 7). In fact, the Sixth Circuit has consistently applied the Matsushita standard to civil rights claims. *See, e.g., Jones v. Barnes*, 585 F.3d 971 (6th Cir. 2009)(affirming summary judgment on §1983 claim under *Matsushita* standard).

allegations, the Defendant City is entitled to judgment as a matter of law.[14]

### C.  The Hamilton Country Treasurer's Motion for Summary Judgment

The motion of the Hamilton County Treasurer presents some of the same general arguments, but also specifically argues against any claim existing under each of the federal statutes referenced in Plaintiff's complaint. Plaintiff initially responds by arguing that this Court "has already ruled on whether Plaintiff has shown a cause of action under these statutes when it reviewed Plaintiff's initial pro se complaint and allowed it to proceed." (Doc. 47 at 8).  However, the relatively low bar required to surmount the "frivolousness" standard used in this Court's initial screening of complaints filed *pro se* and *in forma pauperis* differs from the standard employed upon review of a motion for summary judgment when both parties are represented by counsel.

### 1.  No Cause of Action Under 42 U.S.C. §1982

Section 1982 guarantees that "[a]ll citizens of the United States" have "the same right....as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."  Plaintiff's allegations do not explain how Defendant Goering took any action against Plaintiff in violation of 42 U.S.C. §1982.  Although Defendant Goering did request the filing of a foreclosure proceeding to collect delinquent property taxes by the County Prosecutor, as permitted under O.R.C. §5721.18, Defendant Goering argues persuasively that his action in doing so did not violate any constitutional right and did not reflect any racial animus.  Moreover, the foreclosure action was dismissed

---

[14]The claims against the County could be dismissed for the same reasons.  While the arguments presented by Defendant Hamilton County in its separate motion are not identical, the City's argument is generally applicable to the County Defendant.

once Plaintiff paid his delinquent tax bill, leaving Plaintiff with no possible claim under §1982.

In his memorandum in opposition, Plaintiff states that "Defendants do not deny that...their actions resulted in discrimination against Plaintiff or that they attempted to deprive Plaintiff of his property." (Doc. 47 at 8). As previously discussed, Plaintiff's assertion is unsupported and flatly contradicted by the record; Defendants adamantly deny any racially motivated discrimination.

Plaintiff additionally argues that "Defendants do not provide any basis for their assertions that Plaintiff has failed to show a cause of action." (Doc. 47 at 9). Again, Plaintiff is mistaken to the extent that Defendants have cited to record evidence in their favor, as well as Ohio statutory law. By contrast, it is Plaintiff who has failed to provide any basis for his conclusory allegations.

### 2. Failure to State Claim Under 42 U.S.C. §1983

Defendant Goering argues that Plaintiff had no right not to pay his tax bill, and therefore that Plaintiff cannot show that Defendant violated any of his constitutional rights under §1983. Plaintiff argues in response that under *Monell v. Dep't of Social Servs., supra,* Plaintiff has shown a "causal link" between the City and County's alleged unconstitutional "policy" and the alleged violation of Plaintiff's constitutional rights. However, Plaintiff never offers any proof or cites any support for his conclusory assertion that the City and County conspired to create an unconstitutional "policy."

Plaintiff does offer, as an exhibit to his memorandum in opposition, an undated copy of "Tax Lien Information" that Plaintiff represents he copied from Hamilton County's

16

website, proving (in Plaintiff's eyes) that "Hamilton County sells the delinquent taxes owed to it as tax lien certificates." (Doc. 47 and Docs. 47-7 through 47-10). By contrast, Defendant Goering points out in his reply memorandum that the "Tax Lien" information referenced by Plaintiff is irrelevant, because this case does not involve tax lien certificates. Tax lien certificates are used in the sale of delinquent tax liens to private parties, who may institute foreclosure proceedings under O.R.C. §§5721.30 and 5721.39. No such sale or proceedings are at issue here.

In his opposition to summary judgment, Plaintiff further asserts that Defendants have admitted "that their actions deprived Plaintiff of his use of his property," (Doc. 47 at 12). Plaintiff contends that "Defendant City of Wyoming acknowledges that they effectively evicted Plaintiff from his home by refusing to reconnect his water." (Doc. 47 at 13). Once again, Plaintiff has misinterpreted and/or misrepresented the record. In truth, Defendants have argued (with supporting citations to the record) that Plaintiff has failed to show any improper deprivation of his property rights or of any other constitutional right. Based on the law and the facts of record, Defendants have proven they are entitled to summary judgment because neither Defendant deprived Plaintiff of any constitutional or statutory right when: 1) the City disconnected his water service; 2) the City refused to re-connect the service until Plaintiff paid his water bill; 3) the City certified Plaintiff's unpaid water bill to Hamilton County for placement upon his property tax bill; or 4) the County instituted (and later dismissed) state foreclosure proceedings. (Doc. 48 at 2).

### 3. Failure to State Claim under 42 U.S.C. §1985

Defendant Goering also argues that Plaintiff has failed to show any act in furtherance of an alleged conspiracy, as is required for a claim brought under 42 U.S.C.

§1985(3).  Plaintiff alleges in his complaint that he was forced to move from the property, yet testified that he had not actually lived in the Oak Avenue residence in "five years" as of the date of the 2011 deposition, or "two or three years" prior to the water shut-off.  (Doc. 45 at 20-22, Deposition at 86-88).  Defendant Goering did not initiate foreclosure proceedings until February 2010, well after the time that Plaintiff vacated the property, so Plaintiff's own testimony refutes the allegation in his complaint that Defendant's actions caused him any harm.

In his response in opposition, Plaintiff suggests that "[b]ecause of the disconnection of his water, Plaintiff was forced to move out of his house and had to find alternative accommodation for his family."  Plaintiff also asserts in his opposing memorandum that "[e]ventually Plaintiff moved to Indiana when he could not have his water reconnected." (Doc. 47 at 2).  Plaintiff does not cite to any evidence to support these statements, which are flatly contradicted by Plaintiff's own testimony.  This Court is not required to accept argument when that argument is not only conclusory and unsupported, but is flatly contradicted by the record.  Therefore, Plaintiff's arguments are insufficient to defeat summary judgment in this case.

Plaintiff additionally claims in his opposing memorandum that the referral of delinquent water bills to the County Treasurer for assessment on the owner's tax bill itself constitutes evidence of an improper "conspiracy" between the City and County.  Plaintiff asserts that "Wyoming's own website makes no mention of such an agreement or possibility...." that delinquent water accounts  ultimately will be turned over to the County Treasurer.  (Doc. 47 at 13).  Even assuming Plaintiff's assertion is accurate, without any evidence having been submitted by Plaintiff concerning the contents of Wyoming's entire

website, Wyoming's failure to reference the possibility of following state law and turning over delinquent water bills to the Hamilton County Treasurer's office on its website does not constitute evidence of a conspiracy or of a violation of Plaintiff's rights.

### 4. Immunity from Suit Under State Law

In addition to arguing that Plaintiff has failed to state a claim under any of the three federal statutes referenced in his complaint, Defendant Goering argues that he is immune from suit under O.R.C. §2744.  But as Plaintiff points out, O.R.C. §2744.09(E) expressly restricts governmental immunity for federal civil rights claims.  *See Hale v. Vance*, 267 F. Supp.2d 725, 737 n. 8 (S.D. Ohio 2003).  Therefore, Defendant's argument on this point is misplaced.

### 5. Counsel's Statement

Plaintiff testified at his deposition that no one from the Treasurer's office had ever asked him for his race, nor was there any information on his tax bill to indicate race.  He also testified that he did not believe his tax rates were in any way related to his race.  (Doc. 46-5 at 3, Deposition at 122).  Immediately after that line of questioning, Plaintiff's attorney/spouse objected that Plaintiff "never complained about the rate of the taxes paid." (*Id.*).  Defendant argues that counsel's statement calls into question why the Hamilton County Treasurer is even a party to this lawsuit.  That question is reinforced, Defendant asserts, by Plaintiff's actual payment of the delinquent tax bill following the filing of the foreclosure suit in state court.

As Defendant Goering concedes, however, the statement was by counsel and was not under oath.  For that reason, and because summary judgment in favor of both the City

and County is appropriate on other grounds, the Court declines to consider Plaintiff's attorney's statement as adverse evidence against the Plaintiff.

### III. Conclusion and Recommendations

As discussed above, both the City and the County are entitled to summary judgment. Plaintiff has admitted he has no evidence to support his conclusory claims, and both Defendants have demonstrated the absence of any genuine issue of material fact on the essential elements of Plaintiff's claims, and that they are entitled to judgment on all claims as a matter of law. Accordingly, **IT IS RECOMMENDED THAT:**

1. Defendant Hamilton County Treasurer's motion for summary judgment (Doc. 46) should be **GRANTED**;

2. The Wyoming Defendants' motion for summary judgment (Doc. 45) also should be **GRANTED**; and

3. This case should be **CLOSED**.

 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

LAWRENCE E. BLAINE,                                    Case No. 1:10-cv-208

       Plaintiff,                                         Spiegel, J.

                                                  Bowman, M.J.

   v.

WYOMING CITY MANAGER,
a/k/a City of Wyoming, et al.,

       Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).